IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN EDWARD LEE,<br><br>Defendant. | Cause No. CR 14–12–BLG–SPW<br>CR 14–108–BLG–SPW<br><br>ORDER |

On November 6, 2023, Defendant Ryan Edward Lee filed motions to reduce his 270-month federal drug sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 123 (CR 14–12–BLG–SPW), Doc. 14 (CR 14–108–BLG–SPW); *see* Doc. 102.) His projected release date is March 27, 2033. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed Feb. 23, 2024). On November 8, 2023, counsel was appointed to represent Lee. (Doc. 126.) Appointed counsel filed an amended motion and brief on December 26, 2023. (Doc. 127; Doc. 128.) Lee argues that his medical circumstances and record of rehabilitation support his release. The government opposes Lee's motion on the grounds that his health conditions are not sufficiently serious to warrant compassionate release, and because the 18 U.S.C. § 3553(a) factors are not satisfied. (*See* Doc. 129.) For the reasons stated below, Lee's motion is denied.

1

## ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). Thus, this Court's decision turns on whether the defendant has presented extraordinary and compelling reasons for a reduction and whether that reduction comports with the objectives of § 3533(a). *See Keller*, 2 F.4th at 1284.

Here, Lee argues that he has been rehabilitated. He further argues that the nature of his medical issues, combined with the effects of incarceration, the risk of COVID-19, and the BOP's inability to provide him adequate medical treatment demonstrate extraordinary and compelling reasons to reduce his sentence. Because nothing in the record suggests he is at a heightened risk from COVID-19 compared with any other prisoner, the dispositive issues are whether Lee's medical condition is sufficiently serious, and his medical care is sufficiently inadequate.

Having reviewed Lee's medical records, the Court finds that although his condition is challenging, it is being adequately managed. Lee has failed to show

2

he requires any particular or specialized medical care that the BOP cannot provide. Nor has Lee established he is at risk of suffering serious deterioration in his health or death as a result of that failure to provide care as required by the Sentencing Guidelines. Therefore, even considering Lee's notable rehabilitation, he has not established an extraordinary and compelling reason for compassionate release.

## I.   Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Lee filed a request for relief with the warden of his facility, which was denied on September 29, 2023. (*See* Doc. 128-1.) Lee has therefore exhausted his administrative remedies as required by statute.

## II.   Extraordinary and Compelling Reasons

The Sentencing Commission provides explicit examples of what constitutes an "extraordinary and compelling reason." An extraordinary and compelling reason justifying release exists when a defendant is suffering from a serious physical or medical condition "that substantially diminishes [the defendant's] ability to provide self-care within the environment of a correctional facility and

3

from which he or she is not expected to recover." U.S. Sent'g Comm'n, Guidelines Manual §1B1.13(b)(1)(B)(i) (Nov. 2023). Additionally, "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" can establish an extraordinary and compelling reason. *Id.* §1B1.13(b)(1)(C). Defendants can also show an extraordinary or compelling reason exists when they are housed in a facility with an imminent risk of an infectious disease outbreak, they are at heightened risk of severe medical complications from that outbreak, and the risk cannot be adequately mitigated in a timely manner. *See id.* §1B1.13(b)(1)(D)(i)–(iii). The Sentencing Commission explains that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." *Id.* §1B1.13(d). Because Lee argues that all three medical circumstances entitle him to relief, the Court will address each in turn.

### A. Whether Lee's risk from COVID-19 represents an extraordinary or compelling reason justifying compassionate release.

Lee argues that he is at a heightened risk of severe medical complications from COVID-19. This argument is not persuasive. To show an extraordinary or compelling reason justifying release due to an infectious disease outbreak, a defendant must first show that his facility is at imminent risk of being affected by an outbreak or declared public health emergency. USSG §1B1.13(b)(1)(D)(i). There is no current outbreak of COVID-19 at Lee's facility as FCI El Reno is

4

currently reporting only a single case among 1,208 inmates. *See* Inmate COVID-19 Data, https:// www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (accessed Feb. 14, 2024).

Lee argues that in prison he is exposed to unvaccinated staff members and if there is an outbreak, he will be unable to socially distance or quarantine. (Doc. 128 at 13.) This shows at most a speculative risk, not an imminent one. But assuming for the sake of argument that Lee's facility was at an imminent risk of an outbreak, Lee's concerns are general to all prisoners, not the particular and personal reasons contemplated by the guidelines. *See United States v. Shryock*, No. CR 95-345-RSWL-16, 2023 U.S. Dist. LEXIS 84858, at *5–6 (C.D. Cal. May 12, 2023) (citing cases). Lee does not claim that his gastrointestinal issue is a risk factor for serious illness or death from COVID-19. (*See generally* Doc. 128 at 13.) Further, his records show that Lee successfully recovered from COVID-19 in October 2020 and was vaccinated and boosted in 2021. (Doc. 129-1 at 20, 31, 58, 62.) Other courts have found that fully immunized prisoners cannot satisfy the extraordinary and compelling standard, even when they had established closely-related health conditions. *United States v. Amezcua*, 635 F. Supp. 3d 997, 1009-10 (E.D. Cal. 2022) (citing cases). As such, Lee cannot be said to be "at increased risk of suffering severe medical complications or death as a result of exposure," USSG §1B1.13(b)(1)(D)(ii); therefore, he has not established that the continuing

5

threat of COVID-19 represents an individualized risk to him amounting to an extraordinary and compelling reason for release.

### B. Whether Lee's gastrointestinal issue is an extraordinary or compelling reason justifying release.

Lee has suffered from some sort of rectal discharge since at least 2019, although the severity of the condition is in dispute. Lee claims that he is in "constant pain" and must use gauze or toilet paper to staunch the drainage. (Doc. 128 at 14.) While there is no diagnosis in Lee's records, he claims that after a January 2024 procedure he was diagnosed with a deep posterior anal fissure. (Doc. 131-1 at 2.) Prior to this diagnosis, the government had stated that Lee has periodically recurring hemorrhoids, which are being treated. (Doc. 129 at 12–13.) It is unclear if that is still the government's position, but neither side argues the condition is terminal. For such illnesses, the Guidelines provide two circumstances potentially justifying compassionate release. The Court finds that Lee's condition falls short of meeting either one.

First, an extraordinary and compelling reason justifying release exists when a defendant is suffering from a serious physical or medical condition "that substantially diminishes [their] ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG §1B1.13(b)(1)(B)(i). Lee argues that he has a "substantial[ly] diminished ability to provide self-care in a correctional facility environment." (Doc. 128 at

6

14). It is unclear what necessary self-care Lee is unable to perform from his filings. But more importantly, the ability to provide self-care is only part of the test. Lee has failed to show that he is "not expected to recover" as required by the Guidelines. While a firm diagnosis has perhaps proven elusive, nothing in Lee's records suggests his condition is incurable or life-long. (*See generally* Doc. 128.)

The second circumstance is a closer call. An extraordinary and compelling reason exists when a defendant "that requires long-term or specialized medical care" is not receiving it, "and without [such care] the defendant is at risk of serious deterioration in health or death." USSG §1B1.13(b)(1)(C). Lee has shown that his condition requires long-term medical care. He received a colonoscopy for the condition in 2019 and has continued to be treated for it as recently as January 11, 2024. (Doc. 128 at 13; Doc. 131-1 at 2). Therefore, the dispositive issues are whether the BOP is providing Lee adequate care, and if not, whether he is at risk of serious deterioration in his health.

Lee argues the BOP failed "to provide even minimally adequate care" after his 2019 colonoscopy. (Doc. 128 at 13.) However, Lee's records show that he was seen several times from 2019 through October 2022 for other health care needs, including a forearm issue and COVID-19 treatment. (*See* Doc. 130-1 at 53–59.) Lee's care included treatment from both BOP and external providers. (*See id.* at 33, 91, 161–64). Notably, nothing in the record suggests that Lee complained of

gastrointestinal issues during this period and was denied treatment. Further, when Lee reported gastrointestinal issues at other times, he received thorough care, including rectal exams under anesthesia, antibiotics, and surgical examinations. (*Id.* at 33, 89–91, 123–30, 150, 161–65.)

Lee recently filed an affidavit again claiming he was not provided follow-up medical care, which he states his doctor described as a "must." (Doc. 131-1 at 2). The facts as alleged in the affidavit do not change the Court's analysis. Lee reports that he was provided a second rectal exam on January 11, 2024. (*Id.*) This appears to be the exact sort of ongoing medical treatment Lee feels he is being denied. Without supporting documentation or specifics as to what follow-up care Lee feels he requires and is not receiving, the Court cannot say that the one-month delay between the second rectal exam and the affidavit represents the lack of "even minimally adequate care" that Lee alleges. (*See* Doc. 128 at 13.)

Finally, Lee argues that he has demonstrated "extraordinary" rehabilitation, which should weigh in favor of his compassionate release. (Doc. 128 at 12.) The government does not dispute Lee's prison record but argues that he is still a danger to the community because of his past conduct. (Doc. 129 at 18.) Certainly, Lee has a strong record in prison. He has completed courses including the Challenge Program, Alcoholics Anonymous, and a welding program. (Doc. 123-1 at 13–35.) These programs have addressed many of Lee's noted deficits such as substance

abuse and criminality. He has also submitted to the Court strong endorsements from prison officials. (Doc. 128 at 11.) But while Lee's work toward rehabilitation while incarcerated is commendable, as a matter of law, it cannot satisfy the extraordinary and compelling standard by itself.

In sum, Lee's medical circumstances and rehabilitation combined do not amount to an extraordinary and compelling reason for early release.

### III. Section 3533(a) Factors

Demonstrating an extraordinary and compelling reason to reduce a sentence meets only one element of § 3582(c)(1)(A). The Court need not analyze the sentencing factors absent an extraordinary and compelling reason. *Keller*, 2 F.4th at 1284. Nevertheless, the Court will do so here.

To grant compassionate relief, a court must consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See id.* § 3533(a)(1)–(2). Courts may also consider the advisory guideline range and the

need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Lee was involved in distributing methamphetamine in the Sidney area. (*See* PSR at ¶¶ 24–30.) During his arrest, officers found two ounces of methamphetamine and a .380 semi-automatic pistol. (*Id.* ¶ 30.) Lee was held responsible for 130.04 grams of pure or "actual" methamphetamine. (*Id.* ¶ 32.) His previous criminal history was extensive. (*Id.* ¶¶ 67–85.) While awaiting trial, rather than accept responsibility, Lee attempted to escape the Yellowstone County Detention Facility by carving through a window. (*Id.* ¶¶ 34–40.) Based on these factors, Lee's advisory guideline range was 210 to 262 months incarceration, with a mandatory 60 months to be served consecutively to the drug sentence, for the firearm charge. (*See id.* ¶¶ 51–55, 165.) Lee's 270-month sentence was a low-end guideline sentence. Put simply, his sentence was the lowest the Court could justify in light of his conduct.

While Lee argues he has changed, any rehabilitation by the defendant must be weighed against the § 3553(a) factors, including, as relevant here, the nature and circumstances of the offense, the history and characteristics of the defendant, the need to protect the public, and to provide effective correctional treatment. *See* 18 U.S.C. § 3553(a)(1), 2(A), 2(D). The Court commends Lee for his behavior

while incarcerated. Yet, his present behavior does not yet overcome his past conduct.

Lee and the government disagree on whether his pre-sentence or prison record is more predictive of his future behavior. Lee argues that his prison record demonstrates "there is no longer any concern that he would be a danger to the public if released." (Doc. 128 at 12.) The government argues that he is a "danger to any community he lives in." (Doc. 129 at 18.) On the present record, the government has the better argument.

Lee admitted to acting five times as a "mule" and was transporting highly pure methamphetamine. (PSR ¶¶ 32–33.) When arrested, he first gave a false name and then twice attempted to escape. (*Id.* ¶¶ 29, 34–40.) And although he claimed not to like guns, he had one at the time of his arrest and was planning to acquire one upon his escape. (*Id.* ¶¶ 30, 38.) Lee stated that if officers attempted to recapture him, he would force them to kill him. (*Id.* ¶ 41.) Releasing Lee with nine years remaining on a sentence that was already at the low end of the guideline range would denigrate the seriousness of his crimes and present an unacceptable risk to the community. *See* 18 U.S.C. § 3533(a)(2)(A), (C).

## Conclusion

Accordingly, IT IS ORDERED that the defendant's motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 123, 127 (CR 14–12–BLG–SPW) and Doc. 14 (CR 14–108–BLG–SPW)) are DENIED.

DATED this 26th day of February, 2024.

Susan P. Watters, District Judge
United States District Court